LAW OFFICES

# MITCHELL SCHLEY, LLC

245 PARK AVENUE, 24ᵀᴴ FLOOR

NEW YORK, NEW YORK 10167

(212) 672-1848

FAX (212) 372-8798

mschley@schleylaw.com

MITCHELL SCHLEY

MEMBER OF
NY, NJ & PA BARS

NEW JERSEY OFFICE:
24 HEATHER WAY
EAST BRUNSWICK, NJ 08816

(732) 236-2537
FAX (732) 698-0678

March 9, 2012

**Via ECF**

Honorable Lois Bloom
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

> **Re:**   ***Formanyuk v. Bnos Zion of Bobov, Inc. et al.,***
> **Case No. 11-cv-01778 (ENV) (LB)**

Dear Judge Bloom:

We represent the plaintiff in the above-referenced action. We write pursuant to the Court's February 15, 2012 Order directing plaintiff to supplement the record with respect to the Settlement Agreement that was filed with the Court on February 2, 2012. In compliance with the February 15 Order, we submit Exhibit 1, a stipulation between the parties striking paragraph 6(d) in its entirety from the Settlement Agreement and revising the payment dates, and Exhibit 2, an affidavit regarding the translation of the Settlement Agreement. The Court's February 15 Order also directed plaintiff's counsel to submit their time and expense records, collectively submitted with this letter as Exhibit 3.

As discussed below, although plaintiff's counsel expended 316.5 hours in lawyer and paralegal time from the initial consultation with the named plaintiff until February 14, 2012, plaintiff's counsel have substantially discounted the number of hours for which they seek compensation.

Under the terms of the Settlement Agreement, ¶¶2(a)(3)-(4), defendants have agreed to pay plaintiff's counsel $100,000 in attorneys' fees and expenses. The attorneys' fees and expenses here are not deductions against any settlement amounts. Rather, the fees and expenses were separate and apart from settlement payments to plaintiff and the opt-ins in excess of 100% of their damages, and were agreed to by the defendants represented by experienced counsel. The amount of agreed upon attorneys'

fees was not discussed until after settlement offers were made to the plaintiff and the FLSA opt-ins. The amount that defendants agreed to pay for attorneys' fees and expenses did not change in any way after plaintiff expressed his unwillingness to accept the payment offered to him by defendants.

In considering the proposed Settlement Agreement, we ask the Court to take note of the fact that "[t]he FLSA does not require the court to assess the fairness of an agreed payment of attorneys' fees in settling an individual action. Indeed, the purpose of the fairness review is to ensure than an employer does not take advantage of an employee in settling his claim for wages, and not to ensure that the employee does not overcharge the employer." *Misiewicz v. D'Onofrio Gen. Contractors Corp.*, No. 08 cv 4377 (KAM)(CLP), 2010 U.S. Dist. LEXIS 60985, *14 (E.D.N.Y. May 27, 2010), *aff'd by Misiewicz v. D'Onofrio Gen. Contractors Corp.*, 2010 U.S. Dist. LEXIS 60990 (E.D.N.Y. June 18, 2010) (internal citations omitted). "In an individual FLSA claim, where separate amounts are set forth for the payments of unpaid wages and payments for attorneys' fees, the Court has greater flexibility in exercising its discretion in determining the reasonableness of the attorneys' fee. In other words, there is a greater range of reasonableness for approving attorneys' fees in an individual action where the parties settled on the fee through negotiation." *Id.* at *15. Here, the Court is not being asked to "award" attorneys' fees. The defendants are not challenging the fees; indeed, they have agreed to pay them. Defense counsel are sophisticated employment lawyers experienced in FLSA matters and recognize the legal costs involved in such cases. The highly unusual decision by plaintiff to decline to accept $40,000 -- and we note that in plaintiff's counsel's collective decades of experience, we have not encountered a similar circumstance with a client -- should not negate the work that plaintiff's counsel performed in good faith on behalf of the plaintiff and others.

As the attached records (Exhibit 3) demonstrate, the time for which plaintiff's counsel seeks compensation has been discounted by approximately 25% in light of the facts and circumstances of this case. Plaintiff's counsel are collectively billing for 245.75 hours for a total of $106,950.00 based upon counsel's 2011 regular billing rates, and $5,634.55 in expenses. An affidavit attesting to the expenses is included in Exhibit 3. Plaintiff's counsel are not seeking any compensation for any time post February 14, 2012 or for time expended in connection with this submission.

Moreover, counsel's hourly billing rates are within the range of rates that have been approved by courts in employment class actions. *See, Ebbert v. Nassau Cnty.*, No. CV 5445 (AKT), 2011 U.S. Dist. LEXIS 150080, *45 (E.D.N.Y. Dec. 22, 2011) (holding, "courts have approved, in class actions where the defendants have agreed to pay the specific attorneys' fees, a lodestar based on billable rates of between $405 and $790 for partners and $270 to $500 for associates"). The only two lawyers for whom compensation is being sought have rates of $400 and $450 per hour.

The time records also demonstrate that there has been no duplication of effort between the firms. Each firm has contributed its expertise to this case. Abbey Spanier has litigated hundreds of complex class actions since its founding in 1964, including, in

the last decade, several complex state law wage and hour class actions against the largest private employer in this country. Abbey Spanier's firm resume is attached as Exhibit 4. Mitchell Schley, the principal and sole attorney of the Law Offices of Mitchell Schley, has decades of experience working in employment litigation. Mr. Schley's biography is attached as Exhibit 5. One example of counsel's effort to avoid duplication of work is apparent by the amount of time spent by Judith Spanier, a partner at Abbey Spanier, on the case. Ms. Spanier supervised Ms. Marcus's work on the case, but did not spend a significant amount of time working on the day-to-day aspects of the case so as to avoid any duplication of effort with Mitchell Schley and is not seeking compensation for her time at all.

In an effort to assist the Court with understanding why the hours for which compensation is sought are reasonable, plaintiff's counsel recounts below a narrative of the work performed here. After counsel was contacted by the named plaintiff, counsel conducted their own investigation into defendants' failure to pay all wages due and drafted and filed a complaint on April 12, 2011. Because of the potential class and collective action claims being asserted, plaintiff's counsel determined to work this case jointly and staffed the case to avoid duplication of work. Defendants served their Answer on May 19, 2011. On June 7, 2011, plaintiff served his initial disclosure statement pursuant to Rule 26(a) and defendants served their initial disclosure statement on June 22, 2011.

Then on June 23, 2011, the parties filed their Rule 26(f) Report. Defense counsel indicated that they would oppose conditional certification of the FLSA class, and accordingly, plaintiff's counsel began drafting the motion. However, during the initial court conference held on June 30, 2011, defendants agreed to the conditional certification of the class. The parties were directed by the Court to negotiate the precise language to be used in the FLSA notice. On July 22, 2011, plaintiff submitted to defendants a draft FLSA notice for their review. On July 25, 2011, defendants responded that they would not agree to certain language in the proposed notice. They argued that the section of the notice referencing the New York Labor Law claims should not be included in the notice. Following a review of the cases cited by defendants in support of their contention and additional research by plaintiff's counsel, plaintiff's counsel advised defendants that they did not agree with defendants' interpretation of the case law. Defense counsel ultimately agreed to include this clause in the notice. After the Court's approval of the FLSA notice, plaintiff arranged for the notice to be translated into Spanish, Russian and Polish and mailed the notices to the collective members.

On July 21, 2011, plaintiff served his first set of document requests and interrogatories on the defendants. After reviewing defendants' responses to the discovery requests, plaintiff sent defendants a four page letter outlining his questions about and other issues with the sufficiency of defendants' responses, including case law challenging defendants' unwarranted refusal to produce all putative class members' payroll and time records. In defendants' October 10, 2011 letter, they continued to refuse to produce all putative class members' records and plaintiff's counsel attempted to persuade them otherwise through several phone calls. On November 8, 2011, plaintiff's counsel and

defense counsel held a conference call during which the deficiencies in the document production were discussed and questions were posed about defendants' sources of electronically stored information. Defendants continued to refuse to produce putative class members' documents compelling plaintiff to seek relief from the Court by filing a letter with the Court on November 10, 2011 explaining this dispute. Defendants filed their response on November 14, 2011.

With this discovery dispute outstanding, on November 10, 2011, defendants served Rule 68 Offers of Judgment on the plaintiff and the FLSA opt-ins. Defendants served superseding Rule 68 Offers of Judgment on November 14, 2011. Plaintiff and the opt-ins did not accept the Rule 68 offers.

On November 16, 2011, the Court held a status conference during which the Court ordered defendants to produce all putative class members' documents, including their payroll records, by December 5, 2011. Also on November 16, defendants filed a letter with the Court seeking a pre-motion conference in advance of their filing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) based on the argument that defendants' tendering of Rule 68 Offers of Judgment to plaintiff Formanyuk and the two opt-ins rendered their claims moot. The effect of Rule 68 Offers at various stages of collective and class actions is a developing issue in various circuit and district courts around the country. Plaintiff filed his response to the letter on November 21, 2011.

On December 2, 2011, defendants informed the Court by letter that the parties had reached a settlement in principle and sought the adjournment of all Court-ordered deadlines. Although settled in principle, the actual terms of the settlement agreement took an inordinate amount of time. The lengthy settlement agreement prepared by defendants included many objectionable provisions which required extensive negotiation. The unusual Supplemental Security Income ("SSI") issue raised by Boris Formanyuk posed another set of challenges which required a great deal of time to sort through and address in an effort to find the best solution for him. This included numerous conversations with Mr. Formanyuk and defendants which were made all the more difficult because Mr. Formanyuk does not speak English.

During the February 14, 2012 conference, the Court expressed some concern about the ratio of the negotiated attorneys' fees to the dollar amount that defendants offered to pay to the named plaintiff ($40,000) and the two FLSA opt-ins ($2,000 and $500). As explained in plaintiff's February 3, 2012 letter to the Court, the plaintiff and opt-ins were offered more than the full amount of damages that would be owed to them under the FLSA. While plaintiff's counsel recognizes that the circumstances in this case are unique because the plaintiff has refused to accept the $40,000 offered to him due to his particular circumstances, proportionality is not a requirement under the FLSA. *See Estrella v. P.R. Painting Corp.*, 596 F. Supp. 2d 723, 727 (E.D.N.Y. 2009) (noting "courts have rejected the notion that fee awards should be proportionally tied to a plaintiff's recovery" and that "[t]he fee provisions contained in the FLSA and New York Labor Law were designed in part to secure legal representation for plaintiffs whose wage and hour grievances were too small in terms of expected recovery, to create a financial

- 4 -

incentive for qualified counsel to take such cases under conventional fee arrangements."); *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 169 (2d Cir. 2011) (holding, "where the financial recovery is likely to be small, calculating attorneys' fees as a proportion of damages runs directly contrary to the purpose of fee-shifting statutes: assuring that civil rights claims of modest cash value can attract competent counsel. The whole purpose of fee-shifting statutes is to generate attorneys' fees that are *disproportionate* to the plaintiff's recovery.").

Finally, should the Court conclude that the attorneys' fees negotiated at arm's length with defendants and being paid solely by defendants should nonetheless not be paid by them, plaintiff's counsel requests that defendants not be permitted to keep these funds because that would result in an additional windfall on top of the $40,000 windfall they have already received. In such event, plaintiff's counsel propose that any portion of the attorneys' fees that the Court determines should not be paid to plaintiff's counsel for their work, instead be donated to a charity, subject to Court approval.

Respectfully submitted,

Mitchell Schley

Judith L. Spanier

cc:     All counsel of record (via ECF)

- 5 -

# Exhibit 1

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

BORIS FORMANYUK, on behalf of himself
and all others similarly situated,

Civil Action No. 11-cv-1778 (ENV)

Plaintiff,

- against -

BNOS ZION OF BOBOV, INC. and
BNOS ZION OF BOBOV SCHOOL,

Defendants.

## STIPULATION AMENDING SETTLEMENT AGREEMENT

IT IS HEREBY STIPULATED AND AGREED, by and between the undersigned

counsel, as follows:

1. Paragraph 2(a)(4) of the Settlement Agreement is modified as follows:

   "Within nineteen (19) calendar days of the date this agreement is approved

   by the Court, BZB will send a check in the amount of $25,000 (Twenty-

   Five Thousand Dollars) to Abbey Spanier Rodd & Abrams LLP and

   another check in the amount of $25,000 (Twenty-five Thousand Dollars)

   made payable to Law Offices of Mitchell Schley, LLC.

2. Paragraph 6(d) of the Settlement Agreement is stricken from the Settlement

   Agreement.

Dated: Orangeburg, New York
     March 7, 2012

GREENWALD DOHERTY LLP


By: _____
     Matthew B. Wolin, Esq.
     Attorneys for Defendants
     30 Ramland Road
     Suite 201
     Orangeburg, NY 1096

Dated:  East Brunswick, New Jersey
     March 7, 2012

LAW OFFICES OF MITCHELL
  SCHLEY, LLC

By: _____
     Mitchell Schley, Esq.
     Attorney for Plaintiffs
     197 Route 18 South
     South Tower, Suite 3000
     East Brunswick, New Jersey 08816

Dated:  New York, New York
     March 9, 2012

ABBEY SPANIER RODD
  & ABRAMS, LLP

By: _____
     Judith L. Spanier, Esq.
     Attorney for Plaintiffs
     212 East 39th Street
     New York, New York 10016

2

# Exhibit 2

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

BORIS FORMANYUK, on behalf of himself
and all others similarly situated,

Plaintiff,

- against -

BNOS ZION OF BOBOV, INC. and
BNOS ZION OF BOBOV SCHOOL,

Defendants.

Civil Action No. 11-cv-1778 (LB)

## DECLARATION OF MITCHELL SCHLEY, ESQ.

1.      I am plaintiffs' co-counsel in the above-captioned matter and make this declaration pursuant to the Court's Order dated February 15, 2012, with respect to the non-English speaking signatories to the Settlement Agreement in this case. At all times during this proceeding I utilized Alina Titievskaya to translate and assist me in communications with Russian-speaking plaintiff Boris Formanyuk. This included fully translating the Settlement Agreement to Mr. Formanyuk. Ms. Titievskaya immigrated to the United States from Russia and speaks fluent Russian and English. Ms. Titievskaya received an LL.M. from Touro College Law School in 2010 and she is currently preparing to take the New York bar exam.

2.      Opt-in plaintiff Arelys Munoz, in addition to Spanish, speaks some English but she is not fluent. Her adult son, Juan Munoz, who took some college classes and now works for Con Edison, is fluent in English and Spanish and assisted me in communicating with Ms. Munoz. He informed me that he translated the Settlement Agreement for Ms. Munoz from English to Spanish. At the court conference, the Court directed that counsel have the Settlement Agreement translated for Ms. Munoz by a professional translator. In compliance with this

direction, I attempted to make this arrangement. However, when I telephoned Ms. Munoz I found that both her home telephone number and cell phone number were disconnected and she did not respond to my written correspondence. I thereafter was able to reach her son, Juan Munoz. He informed me that his mother's telephone numbers were disconnected because she is now in the Dominican Republic. He is not certain when she will return.

3.      I discussed with Mr. Munoz the issue of his mother's understanding of the meaning of the Settlement Agreement and wanted to be sure that she had understood that by accepting the settlement she was in particular giving up the right to file a lawsuit in the future against Bnos Zion about anything with one exception. He told me that he had discussed this with her and that there was no doubt in his mind that she understood. In this connection, it can be noted that Ms. Munoz worked for Bnos Zion as a part-time cafeteria worker for only about 9 months ending in June 2010. She left voluntarily and was not terminated. As a part-time employee, Ms. Munoz never worked in excess of 40 hours per week.

4.      The Settlement Agreement provides, as insisted upon by plaintiffs' counsel, that none of the signatories waive their right to file a claim in the future against Bnos Zion for any unknown claims of occupational injury or disease.


        I declare under penalty of perjury that the foregoing is true and correct.


                                        /s/Mitchell Schley_____
                                        Mitchell Schley
                                        Attorney for Plaintiffs

Dated: March 6, 2012


- 2 -

# Exhibit 3

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

BORIS FORMANYUK, on behalf of himself
and all others similarly situated,

Civil Action No. 11-cv-1778 (ENV)

                    Plaintiff,

-    against -

BNOS ZION OF BOBOV, INC. and
BNOS ZION OF BOBOV SCHOOL,

                    Defendants.

## DECLARATION OF JUDITH L. SPANIER

I, Judith L. Spanier, declare and state as follows:

1.      I am a partner of the law firm of Abbey Spanier Rodd & Abrams LLP ("Abbey Spanier").  I submit this declaration in support of plaintiff's March 9, 2012 letter to the Court. This Declaration sets forth the unreimbursed expenses that Abbey Spanier has incurred in connection with work performed since the inception of this litigation through February 14, 2012.

2.      The schedule attached hereto is a summary indicating the amount of unreimbursed expenses incurred by my firm in connection with the prosecution of this litigation since its inception through February 14, 2012.  The expenses incurred in this action are reflected on the books and records of my firm.  These books and records are prepared from expense vouchers, check records and other source materials and represent an accurate recordation of the expenses incurred.

3.      I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 9th day of March, 2012 in New York, NY.

JUDITH L. SPANIER

**FORMANYUK V. BNOS ZION OF BOBOV, INC. ET AL.,**

**EXPENSE REPORT**

FIRM NAME:   ABBEY SPANIER RODD & ABRAMS, LLP

REPORTING PERIOD:   INCEPTION THROUGH FEBRUARY 14, 2012

| EXPENSE | AMOUNT |
|---|---|
| Transcripts | $  106.80 |
| On-Line Research - Lexis and Pacer | $3,604.50 |
| Service, Filing & Court Fees | $  422.50 |
| Copy/Duplicating | $  375.75 |
| Translation Costs | $1,125.00 |
| Total | $5,634.55 |

Abbey Spanier Rodd & Abrams, LLP

## Case: 1369 - BNOS ZION (JLS/NSM/YG)

**All Attorneys**

**All**                                              **Order:Attorney**

| Date | Case | Attorney | Activity | Category | Hours | Amount | Description |
|------|------|----------|----------|----------|-------|--------|-------------|
| 09/16/2011 | 1369 | KV | DOC | | 1.00 | | DOCUMENT MANAGEMENT |
| 11/14/2011 | 1369 | KV | REV | | 2.50 | | REVIEWED PAYROLL RECORDS AND UPDATED CHART OF OVERTIME HOURS |
| 11/15/2011 | 1369 | KV | REV | | 2.00 | | REVIEWED PAYROLL RECORDS AND UPDATED CHART OF OVERTIME HOURS |
| 11/16/2011 | 1369 | KV | REV | | 6.00 | | REVIEWED PAYROLL RECORDS AND UPDATED CHART OF OVERTIME HOURS |
| 11/17/2011 | 1369 | KV | REV | | 7.00 | | REVIEWED PAYROLL RECORDS AND UPDATED CHART OF OVERTIME HOURS |
| 11/18/2011 | 1369 | KV | REV | | 5.50 | | REVIEWED PAYROLL RECORDS AND UPDATED CHART OF OVERTIME HOURS |
| **KATHERINE VAROUKAS** | | | | | **24.00** | | **Subtotal** |
| 01/06/2011 | 1369 | JLS | CMT | | 0.50 | | CONF M. SCHLEY, NK |
| 03/29/2011 | 1369 | JLS | COM | | 1.00 | | COMPLAINT |
| 03/30/2011 | 1369 | JLS | COM | | 1.00 | | REVIEW COMPLAINT |
| 03/31/2011 | 1369 | JLS | COM | | 0.50 | | REVIEW COMPLAINT |
| 04/08/2011 | 1369 | JLS | COM | | 0.25 | | FINALIZE COMPLAINT |
| 04/11/2011 | 1369 | JLS | COM | | 0.25 | | SIGN OFF ON FINAL VERSION OF COMPLAINT |
| 04/12/2011 | 1369 | JLS | CMT | | 0.25 | | REVIEW INFO RE CT/MAG |
| 04/12/2011 | 1369 | JLS | CMT | | 0.25 | | SERVICE ISSUES |
| 05/23/2011 | 1369 | JLS | CMT | | 0.50 | | TEL W/NSM RE MOTION TO STRIKE |
| 05/25/2011 | 1369 | JLS | CMT | | 0.25 | | TEL RE MOTION TO STRIKE |
| 06/22/2011 | 1369 | JLS | CMT | | 0.25 | | CONF NSM RE INIT DISCLOSURES |
| 11/15/2011 | 1369 | JLS | CMT | | 1.00 | | CONF NSM RE RULE 68 ISSUES |
| 11/17/2011 | 1369 | JLS | RES | | 1.50 | | REVIEW RULE 68 ISSUES |
| 11/21/2011 | 1369 | JLS | CMT | | 0.25 | | PHONE CALL W/NSM AND SCHLEY |
| 01/10/2012 | 1369 | JLS | DIS | | 0.25 | | REVIEW DRAFT STIP |
| 01/31/2012 | 1369 | JLS | CMT | | 0.25 | | REVIEW LETTER TO CT |
| 02/06/2012 | 1369 | JLS | CMT | | 0.50 | | TEL CONF RE PLAINTIFF W/NSM AND SCHLEY |
| **JUDITH L.SPANIER** | | | | | **8.75** | | **Subtotal** |
| 11/16/2011 | 1369 | YG | DOC | | 6.00 | | ENTER PLAINTIFFS TIMESHEET RECORDS |
| 11/17/2011 | 1369 | YG | DOC | | 6.50 | | ENTER PLAINTIFFS TIMESHEET RECORDS |
| **YVONNE GADSDEN (PARA)** | | | | | **12.50** | | **Subtotal** |
| 08/04/2011 | 1369 | CIB | DOC | | 0.50 | | DOCUMENT MANAGEMENT |
| 10/11/2011 | 1369 | CIB | DOC | | 1.00 | | DOCUMENT REVIEW |
| 10/11/2011 | 1369 | CIB | DOC | | 1.00 | | DOCUMENT REVIEW |
| 10/12/2011 | 1369 | CIB | DOC | | 2.50 | | DOCUMENT REVIEW |
| 10/12/2011 | 1369 | CIB | DOC | | 2.50 | | DOCUMENT REVIEW |

## Case: 1369 - BNOS ZION (JLS/NSM/YG)

**All Attorneys**

**All**                                    **Order:Attorney**

| Date | Case | Attorney | Activity | Category | Hours | Amount | Description |
|------|------|----------|----------|----------|-------|--------|-------------|
| 10/13/2011 | 1369 | CIB | DOC | | 6.00 | | DOCUMENT REVIEW |
| 10/13/2011 | 1369 | CIB | DOC | | 6.00 | | DOCUMENT REVIEW |
| 10/17/2011 | 1369 | CIB | DOC | | 3.00 | | DOCUMENT REVIEW |
| 11/07/2011 | 1369 | CIB | DOC | | 3.00 | | DOCUMENT REVIEW |
| **CINDY BOMZER** | | | | | **25.50** | | **Subtotal** |
| 04/08/2011 | 1369 | NSM | CMT | | 0.50 | 225.00 | REVIEW CERTIFICATES OF INCORPORATION |
| 04/11/2011 | 1369 | NSM | COM | | 1.00 | 450.00 | FINALIZE COMPLAINT |
| 05/23/2011 | 1369 | NSM | MOT | | 1.75 | 787.50 | REVIEW ANSWER; RESEARCH RE MOTION TO STRIKE |
| 05/23/2011 | 1369 | NSM | MOT | | 0.50 | 225.00 | PHONE CALL W/JLS RE MOTION TO STRIKE |
| 05/25/2011 | 1369 | NSM | MOT | | 0.25 | 112.50 | REVIEW ANSWER; RESEACH RE MOTION TO STRIKE |
| 05/25/2011 | 1369 | NSM | MOT | | 0.25 | 112.50 | PHONE CALL W/JLS RE MOTION TO STRIKE |
| 05/26/2011 | 1369 | NSM | DIS | | 2.00 | 900.00 | DRAFT INITIAL DISCLOSURES |
| 05/27/2011 | 1369 | NSM | DIS | | 0.50 | 225.00 | EDIT INITIAL DISCLOSURES |
| 05/31/2011 | 1369 | NSM | DIS | | 0.50 | 225.00 | EDIT INITIAL DISCLOSURES; EMAIL SCHLEY |
| 06/01/2011 | 1369 | NSM | DIS | | 0.25 | 112.50 | EDIT DISCLOSURES |
| 06/14/2011 | 1369 | NSM | MOT | | 3.00 | 1,350.00 | RESEARCH RE CONDITIONAL CERT |
| 06/22/2011 | 1369 | NSM | MOT | | 7.00 | 3,150.00 | RESEARCH AND DRAFT MOTION FOR CONDITIONAL CERT; DRAFT DISCOVERY PLAN; CALL COURT RE FILING |
| 06/22/2011 | 1369 | NSM | DIS | | 0.25 | 112.50 | PHONE CALL W/SCHLEY |
| 06/22/2011 | 1369 | NSM | DIS | | 0.25 | 112.50 | DISCUSS DISCLOSURES W/JLS |
| 06/22/2011 | 1369 | NSM | CMT | | 0.25 | 112.50 | PHONE CALL W/WOLIN |
| 06/23/2011 | 1369 | NSM | DIS | | 0.50 | 225.00 | PHONE CALL W/SCHLEY AND EDIT/FILE DISCOVERY PLAN |
| 06/27/2011 | 1369 | NSM | COM | | 0.25 | 112.50 | DRAFT AND FILE NOTICE OF APPEARANCE |
| 06/28/2011 | 1369 | NSM | DIS | | 0.50 | 225.00 | ANALYZE INITIAL DISCLOSURES |
| 06/29/2011 | 1369 | NSM | MOT | | 0.50 | 225.00 | PREPARE FOR HEARING |
| 06/30/2011 | 1369 | NSM | CRT | | 2.50 | 1,125.00 | TRAVEL TO/FROM COURT; ATTEND PRETRIAL CONFERENCE; DRAFT MEMO RE CONFERENCE |
| 06/30/2011 | 1369 | NSM | DIS | | 1.50 | 675.00 | DRAFT DOC REQUESTS AND ROGS |
| 07/01/2011 | 1369 | NSM | DIS | | 1.00 | 450.00 | EDIT DOC REQUESTS AND ROGS |
| 07/05/2011 | 1369 | NSM | DIS | | 2.00 | 900.00 | EDIT DOC REQUESTS AND ROGS |
| 07/07/2011 | 1369 | NSM | CMT | | 0.25 | 112.50 | PHONE CALL W/SCHLEY |
| 07/11/2011 | 1369 | NSM | DIS | | 0.25 | 112.50 | EDIT DOC REQUESTS |
| 07/15/2011 | 1369 | NSM | DIS | | 1.00 | 450.00 | EDIT DOC REQUESTS AND ROGS |
| 07/18/2011 | 1369 | NSM | DIS | | 1.00 | 450.00 | EDIT DOC REQUESTS AND ROGS |
| 07/20/2011 | 1369 | NSM | CMT | | 0.25 | 112.50 | PHONE CALL W/SCHLEY; EMAIL SCHLEY |

Abbey Spanier Rodd & Abrams, LLP

## Case: 1369 - BNOS ZION (JLS/NSM/YG)

**All Attorneys**

**All**                                    **Order:Attorney**

| Date | Case | Attorney | Activity | Category | Hours | Amount | Description |
|------|------|----------|----------|----------|-------|--------|-------------|
| 07/21/2011 | 1369 | NSM | DIS | | 0.25 | 112.50 | FINALIZE DOC REQUESTS AND ROGS |
| 07/21/2011 | 1369 | NSM | CMT | | 0.25 | 112.50 | PHONE CALL W/SCHLEY |
| 07/26/2011 | 1369 | NSM | CMT | | 0.25 | 112.50 | PHONE CALL W/SCHLEY |
| 07/26/2011 | 1369 | NSM | REV | | 0.50 | 225.00 | REVIEW DEFENDANTS' COMMENTS RE FLSA NOTICE |
| 07/27/2011 | 1369 | NSM | RES | | 2.00 | 900.00 | RESEARCH RE DEFENDANTS' OPPOSITION TO FLSA NOTICE |
| 07/28/2011 | 1369 | NSM | CMT | | 0.25 | 112.50 | PHONE CALL W/SCHLEY |
| 07/29/2011 | 1369 | NSM | CMT | | 0.25 | 112.50 | PHONE CALL W/SCHLEY |
| 08/01/2011 | 1369 | NSM | CMT | | 0.25 | 112.50 | DRAFT LETTER |
| 08/01/2011 | 1369 | NSM | CMT | | 0.25 | 112.50 | PHONE CALL W/SCHLEY |
| 08/02/2011 | 1369 | NSM | CMT | | 1.50 | 675.00 | REVIEW PROPOSED FLSA NOTICE; RESEARCH |
| 08/03/2011 | 1369 | NSM | CMT | | 0.25 | 112.50 | EDIT LETTER |
| 08/03/2011 | 1369 | NSM | CMT | | 0.25 | 112.50 | PHONE CALL W/SCHLEY |
| 08/08/2011 | 1369 | NSM | CMT | | 0.25 | 112.50 | PHONE CALL W/SCHLEY RE HEARING |
| 08/09/2011 | 1369 | NSM | CMT | | 1.00 | 450.00 | PREPARE FOR STATUS CONFERENCE AND PARTICIPATE IN COURT CONFERENCE |
| 08/09/2011 | 1369 | NSM | CMT | | 0.25 | 112.50 | PHONE CALL W/TRANSLATOR |
| 08/12/2011 | 1369 | NSM | RES | | 0.50 | 225.00 | FACT INVESTIGATION RE MISSING ADDRESSES |
| 08/15/2011 | 1369 | NSM | RES | | 1.50 | 675.00 | FACT INVESTIGATION RE MISSING ADDRESSES; REVIEW TRANSLATIONS; EMAIL SCHLEY |
| 08/16/2011 | 1369 | NSM | CMT | | 0.25 | 112.50 | PREPARE LANGUAGE LIST |
| 08/18/2011 | 1369 | NSM | CMT | | 1.00 | 450.00 | EMAIL DEFENSE COUNSEL; FINALIZE NOTICE |
| 09/06/2011 | 1369 | NSM | RES | | 0.25 | 112.50 | FACT INVESTIGATION RE RETURNED FLSA NOTICES |
| 09/07/2011 | 1369 | NSM | RES | | 0.25 | 112.50 | FACT INVESTIGATION RE RETURNED FLSA NOTICES |
| 09/08/2011 | 1369 | NSM | RES | | 0.25 | 112.50 | FACT INVESTIGATION RE RETURNED FLSA NOTICES |
| 09/12/2011 | 1369 | NSM | RES | | 5.75 | 2,587.50 | RESEARCH RE CLASS CERT AND FLSA DISCOVERYD |
| 09/12/2011 | 1369 | NSM | CMT | | 0.25 | 112.50 | PHONE CALL W/SCHLEY |
| 09/13/2011 | 1369 | NSM | DIS | | 1.00 | 450.00 | REVIEW RESPONSES TO DOC REQUESTS AND ROGS; RESEARCH |
| 09/14/2011 | 1369 | NSM | DOC | | 1.00 | 450.00 | REVIEW DOCUMENTS; EMAIL SCHLEY |
| 09/15/2011 | 1369 | NSM | DIS | | 1.00 | 450.00 | DRAFT DISCOVERY DISPUTE LETTER |
| 09/16/2011 | 1369 | NSM | DIS | | 3.75 | 1,687.50 | DRAFT DISCOVERY DISPUTE LETTER; RESEARCH |

Abbey Spanier Rodd & Abrams, LLP

## Case: 1369 - BNOS ZION (JLS/NSM/YG)

**All Attorneys**

**All**                                          **Order:Attorney**

| Date | Case | Attorney | Activity | Category | Hours | Amount | Description |
|------|------|----------|----------|----------|-------|--------|-------------|
| 09/16/2011 | 1369 | NSM | CMT | | 0.25 | 112.50 | PHONE CALL W/SCHLEY |
| 09/19/2011 | 1369 | NSM | DIS | | 3.50 | 1,575.00 | RESEARCH RE DISCOVERY DISPUTE |
| 09/20/2011 | 1369 | NSM | DIS | | 5.00 | 2,250.00 | RESEARCH RE DISCOVERY DISPUTE; DRAFT LETTER |
| 09/21/2011 | 1369 | NSM | DIS | | 2.50 | 1,125.00 | RESEARCH AND DRAFT DISCOVERY LETTER |
| 09/22/2011 | 1369 | NSM | CMT | | 0.25 | 112.50 | PHONE CALL W/SCHLEY |
| 09/22/2011 | 1369 | NSM | CMT | | 0.25 | 112.50 | EDIT LETTER |
| 09/23/2011 | 1369 | NSM | DIS | | 0.75 | 337.50 | RESEARCH RE DISCOVERY DISPUTE |
| 09/27/2011 | 1369 | NSM | CMT | | 0.50 | 225.00 | ANALYZE 2D CIR DECISION; EMAIL SCHLEY |
| 09/28/2011 | 1369 | NSM | RES | | 0.50 | 225.00 | FACT INVESTIGATION RE RETURNED FLSA NOTICES |
| 10/10/2011 | 1369 | NSM | CMT | | 2.00 | 900.00 | REVIEW LETTER; RESEARCH RE DISCOVERY |
| 10/11/2011 | 1369 | NSM | RES | | 5.00 | 2,250.00 | REVIEW DEFENDANTS' LETTER; REVIEW DOCS; RESEARCH RE ESI |
| 10/11/2011 | 1369 | NSM | CMT | | 0.25 | 112.50 | PHONE CALL W/SCHLEY |
| 10/12/2011 | 1369 | NSM | RES | | 3.00 | 1,350.00 | DRAFT AGENDA FOR ESI CALL; RESEARCH RE ESI ISSUES; REVIEW DOCUMENTS |
| 10/13/2011 | 1369 | NSM | DOC | | 3.00 | 1,350.00 | REVIEW DOCUMENTS; RESEARCH RE DISCOVERY DISPUTE |
| 10/17/2011 | 1369 | NSM | CMT | | 4.00 | 1,800.00 | REVIEW DOCUMENTS; DRAFT AGENDA; FILE OPT-INS; PHONE CALL W/COURT RE FILING |
| 10/24/2011 | 1369 | NSM | CMT | | 0.25 | 112.50 | PHONE CALL W/SCHLEY |
| 10/26/2011 | 1369 | NSM | RES | | 4.00 | 1,800.00 | RESEARCH RE CLASS CERT |
| 10/28/2011 | 1369 | NSM | CMT | | 0.25 | 112.50 | PHONE CALL W/SCHLEY |
| 10/31/2011 | 1369 | NSM | DIS | | 3.00 | 1,350.00 | RESEARCH RE DISCOVERY |
| 11/03/2011 | 1369 | NSM | CMT | | 0.25 | 112.50 | EMAIL SCHLEY |
| 11/04/2011 | 1369 | NSM | MOT | | 1.50 | 675.00 | DRAFT MOTION TO COMPEL |
| 11/07/2011 | 1369 | NSM | CMT | | 2.50 | 1,125.00 | PREPARE FOR MEET AND CONFER; REVIEW OPT-IN DOCUMENTS |
| 11/07/2011 | 1369 | NSM | CMT | | 0.25 | 112.50 | PHONE CALL W/SCHLEY |
| 11/07/2011 | 1369 | NSM | CMT | | 2.50 | 1,125.00 | PREPARE FOR MEET AND CONFER; REVIEW OPT-IN DOCUMENTS; PHONE CALL W/SCHLEY |
| 11/08/2011 | 1369 | NSM | CMT | | 1.50 | 675.00 | PREPARE FOR MEET AND CONFER CONFERENCE CALL |
| 11/08/2011 | 1369 | NSM | CMT | | 5.00 | 2,250.00 | RESEARCH RE NON-PARTY SUBPOENAS, DUTY TO RETAIN TIME/PAYROLL RECORDS; DRAFT LETTER TO COURT |
| 11/08/2011 | 1369 | NSM | CMT | | 0.50 | 225.00 | PHONE CALL W/DEFENDANTS AND SCHLEY |
| 11/08/2011 | 1369 | NSM | CMT | | 0.50 | 225.00 | PHONE CALL W/SCHLEY |
| 11/09/2011 | 1369 | NSM | CMT | | 6.00 | 2,700.00 | RESEARCH AND DRAFT LETTER TO COURT |
| 11/10/2011 | 1369 | NSM | CMT | | 2.25 | 1,012.50 | EDIT LETTER; FILE LETTER |

Abbey Spanier Rodd & Abrams, LLP

## Case: 1369 - BNOS ZION (JLS/NSM/YG)

All Attorneys

**All**                                                    **Order:Attorney**

| Date | Case | Attorney | Activity | Category | Hours | Amount | Description |
|------|------|----------|----------|----------|-------|--------|-------------|
| 11/11/2011 | 1369 | NSM | RES | | 5.50 | 2,475.00 | RESEARCH RE RULE 68 OFFER |
| 11/15/2011 | 1369 | NSM | CMT | | 6.25 | 2,812.50 | RESEARCH RE RULE 68; PREPARE FOR STATUS CONFERENCE |
| 11/15/2011 | 1369 | NSM | CMT | | 1.00 | 450.00 | DISCUSS STRATEGY W/JLS; CONF JLS RE RULE 68 ISSUES |
| 11/15/2011 | 1369 | NSM | CMT | | 0.25 | 112.50 | PHONE CALL W/SCHLEY |
| 11/16/2011 | 1369 | NSM | CRT | | 8.50 | 3,825.00 | PREPARE FOR STATUS CONFERENCE; TRAVEL TO/FROM OFFICE TO COURT; ATTEND STATUS CONFERENCE; RESEARCH RE RULE 68 OFFERS |
| 11/17/2011 | 1369 | NSM | RES | | 5.50 | 2,475.00 | RESEARCH RE PRE-MOTION CONFERENCE LETTER; EMAIL JLS AND SCHLEY |
| 11/18/2011 | 1369 | NSM | CMT | | 5.00 | 2,250.00 | DRAFT LETTER TO COURT; RESEARCH |
| 11/19/2011 | 1369 | NSM | RES | | 3.00 | 1,350.00 | DRAFT LETTER; RESEARCH RE RULE 68 ISSUES |
| 11/21/2011 | 1369 | NSM | CMT | | 0.25 | 112.50 | PHONE CALL W/JLS AND SCHLEY |
| 11/21/2011 | 1369 | NSM | RES | | 5.00 | 2,250.00 | RESEARCH RE RULE 68; FINALIZE LETTER |
| 11/22/2011 | 1369 | NSM | RES | | 6.00 | 2,700.00 | RESEARCH RE RULE 68; EMAIL SCHLEY AND JLS |
| 12/09/2011 | 1369 | NSM | SET | | 3.00 | 1,350.00 | REVIEW SETTLEMENT AGREEMENT; RESEARCH RE CONFIDENTIALITY |
| 12/12/2011 | 1369 | NSM | SET | | 1.00 | 450.00 | EDIT SETTLEMENT AGREEMENT; EMAIL JLS |
| 02/01/2012 | 1369 | NSM | CMT | | 0.25 | 118.75 | PHONE CALL W/WOLIN; EMAIL WOLIN |
| 02/01/2012 | 1369 | NSM | CMT | | 0.25 | 118.75 | PHONE CALL W/SCHLEY |
| 02/02/2012 | 1369 | NSM | CMT | | 0.25 | 118.75 | PHONE CALL W/WOLIN; EMAIL SCHLEY |
| 02/03/2012 | 1369 | NSM | CMT | | 0.25 | 118.75 | PHONE CALL W/SCHLEY |
| 02/06/2012 | 1369 | NSM | CMT | | 0.50 | 237.50 | TEL CONF W/JLS AND SCHLEY |
| 02/13/2012 | 1369 | NSM | CRT | | 0.50 | 237.50 | PREPARE FOR HEARING |
| 02/14/2012 | 1369 | NSM | CRT | | 3.00 | 1,425.00 | TRAVEL FROM OFFICE TO COURT AND ATTEND HEARING |

|  | | | | | | | |
|------|------|------|------|------|------|------|------|
| **NATALIE S. MARCUS** | | | | | **170.50** | **76,850.00** | **Subtotal** |

| **GRAND TOTALS** | **241.25** |
|------------------|-----------|

All Attorneys

**Law Offices of Mitchell Schley, LLC**

**Boris Formanyuk v. Bnos Zion**

<u>Notes</u>
1. Time of Paralegal/Translator Alina Titievskaya is not being billed
2. Time after February 14, 2012 Court conference is not being billed
3. T/C = Telephone Conference
4. Mitchell Schley Hourly Rate: $400

| Date | Description | Hours | Amount |
|------|-------------|-------|--------|
| 11/30/10 | Conference with Boris Formanyuk and Alina Titievskaya | 1.5 | 600 |
| 12/3/10 | Conference with Boris Formanyuk and Alina | 1.25 | 500 |
| 12/9/10 | Review and organize documents provided by Boris Formanyuk | 2.75 | 1,100 |
| 1/6/11 | T/C Judith Spanier | .5 | 200 |
| 3/23/11 | Corporation research re: defendants; legal research re: exemption of non-profits under NYLL; non-profit religious school coverage under NYLL; spread of hours issues | 2.5 | 1,400 |
| 3/25/11 | Legal research re: FLSA coverage, non-profit religious schools; enterprise issues | 2.75 | 1,500 |
| 3/27/11 | Prepare complaint | 1.5 | 1,800 |
| 4/10/11 | Revisions to complaint | .75 | 500 |
| 4/14/11 | T/C Alina | .25 | 100 |
| 5/2/11 | T/C Alina | .25 | 100 |
| 5/4/11 | T/C Alina | .25 | 100 |
| 5/20/11 | Review defendant's answer | .25 | 100 |
| 5/31/11 | T/C Alina | .25 | 100 |
| 6/2/11 | Review and revise disclosures | .5 | 200 |
| 6/9/11 | T/C Alina | .25 | 100 |
| 6/10/11 | T/C Alina | .25 | 100 |

| | | | |
|---|---|---|---|
| 6/22/11 | T/C Matthew Wolin | .25 | 100 |
| 6/22/11 | T/C Natalie Marcus | .25 | 100 |
| 6/22/11 | Review defendant's disclosure | .25 | 100 |
| 6/23/11 | T/C Marcus | .25 | 100 |
| 6/29/11 | Prepare for court conference | .5 | 200 |
| 6/30/11 | Pre-trial conference | 2.0 | 800 |
| 7/6/11 | Review document request and interrogatories | .5 | 200 |
| 7/7/11 | T/C Marcus | .25 | 100 |
| 7/20/11 | T/C Marcus | .25 | 100 |
| 7/21/11 | T/C Marcus | .25 | 100 |
| 7/26/11 | T/C Marcus | .25 | 100 |
| 7/27/11 | Review FLSA Notice | .25 | 100 |
| 7/27/11 | Research re: FLSA Notice | 1.75 | 700 |
| 7/28/11 | T/C Marcus | .25 | 100 |
| 7/29/11 | T/C Marcus | .25 | 100 |
| 8/1/11 | T/C Wolin | .25 | 100 |
| 8/1/11 | T/C Marcus | .25 | 100 |
| 8/2/11 | Review FLSA Notice | .25 | 100 |
| 8/3/11 | T/C Marcus | .25 | 100 |
| 8/8/11 | T/C Marcus | .25 | 100 |
| 8/9/11 | Court conference | 1.0 | 400 |
| 8/10/11 | T/C Wolin | .25 | 100 |
| 9/12/11 | T/C Marcus | .25 | 100 |
| 9/14/11 | Review defendant's reply to plaintiffs' document demand and interrogatories and documents | 1.25 | 500 |
| 9/16/11 | T/C Marcus | .25 | 100 |
| 9/22/11 | Review and revise letter to defendants re: inadequate discovery responses | .5 | 200 |
| 9/22/11 | T/C Marcus | .25 | 100 |
| 9/26/11 | Revise plaintiff's request for documents | .25 | 100 |

| | | | |
|---|---|---|---|
| 10/10/11 | Review discovery letter | .5 | 200 |
| 10/11/11 | T/C Marcus | .25 | 100 |
| 10/12/11 | T/C Alina | .25 | 100 |
| 10/13/11 | Review document production | 1.5 | 600 |
| 10/24/11 | T/C Marcus | .25 | 100 |
| 10/28/11 | T/C Marcus | .25 | 100 |
| 10/28/11 | T/C Wolin | .25 | 100 |
| 11/6/11 | Review Motion to Compel | .5 | 200 |
| 11/6/11 | Legal research re: pre-class certification discovery | 2.75 | 1,100 |
| 11/7/11 | T/C Marcus | .25 | 100 |
| 11/7/11 | Review defendant's documents | .5 | 200 |
| 11/8/11 | Phone calls with Marcus | .5 | 200 |
| 11/10/11 | Review and revise letter to court | .75 | 300 |
| 11/15/11 | T/C Marcus | .25 | 100 |
| 11/16/11 | Court conference re: discovery | 2.5 | 1,000 |
| 11/17/11 | T/C Alina | .25 | 100 |
| 11/17/11 | T/C Boris Formanyuk | .25 | 100 |
| 11/17/11 | T/C Jerzy Warias | .25 | 100 |
| 11/17/11 | T/C Jerzy Warias | .75 | 300 |
| 11/17/11 | T/C Jerzy Warias | .25 | 100 |
| 11/18/11 | T/C Alina | .25 | 100 |
| 11/19/11 | Review letter to court | .25 | 100 |
| 11/21/11 | T/C Marcus | .25 | 100 |
| 11/22/11 | T/C Arelys Munoz | .25 | 100 |
| 11/22/11 | T/C Juan Munoz | .25 | 100 |
| 11/22/11 | T/C Juan Munoz | .25 | 100 |
| 11/23/11 | T/C Wolin | .25 | 100 |
| 11/29/11 | T/C Wolin | .25 | 100 |
| 11/30/11 | T/C Wolin | .25 | 100 |

| | | | |
|---|---|---|---|
| 12/1/11 | Review of settlement agreement | .5 | 200 |
| 12/1/11 | T/C Wolin | .25 | 100 |
| 12/2/11 | T/C Wolin | .25 | 100 |
| 12/10/11 | Review and revise settlement agreement | 1.5 | 600 |
| 12/19/11 | T/C Wolin | .25 | 100 |
| 12/21/11 | T/C Wolin | .25 | 100 |
| 12/22/11 | T/C Wolin | .25 | 100 |
| 12/22/11 | Review and revise settlement agreement | .25 | 100 |
| 1/3/12 | T/C Boris Formanyuk | .25 | 100 |
| 1/3/12 | T/C Andrei Formanyuk | .25 | 100 |
| 1/3/12 | T/C Jerzy Warias | .25 | 100 |
| 1/3/12 | T/C Juan Munoz | .25 | 100 |
| 1/4/12 | T/C Alina | .25 | 100 |
| 1/5/12 | T/C Alina | .25 | 100 |
| 1/6/12 | T/C Wolin | .25 | 100 |
| 1/6/12 | T/C Andrei Formanyuk | .25 | 100 |
| 1/6/12 | T/C Larry Simon, Esq. re: SSI | .25 | 100 |
| 1/6/12 | T/C Robert Cheslow, Esq. re: SSI | .25 | 100 |
| 1/7/12 | Legal research re: effect of SSI on the receipt of a legal settlement | 1.75 | 700 |
| 1/8/12 | Legal research re: effect of SSI on the receipt of a legal settlement | 2.75 | 1,100 |
| 1/4/12 | T/C Alina | .25 | 100 |
| 1/7/12 | T/C Alina | .25 | 100 |
| 1/7/12 | T/C Andrei Formanyuk | .25 | 100 |
| 1/10/12 | T/C Jerzy Warias | .25 | 100 |
| 1/10/12 | T/C Andrei Formanyuk | .25 | 100 |
| 1/10/12 | T/C Wolin | .25 | 100 |
| 1/10/12 | T/C Wolin | .25 | 100 |
| 1/10/12 | T/C Angela Formanyuk | .25 | 100 |

| 1/10/12 | T/C Andrei Formanyuk | .25 | 100 |
|---------|----------------------|-----|-----|
| 1/11/12 | T/C Alina | .25 | 100 |
| 1/11/12 | T/C Wolin | .25 | 100 |
| 1/11/12 | T/C Zina Formanyuk | .25 | 100 |
| 1/11/12 | T/C Anna Formanyuk | .25 | 100 |
| 1/13/12 | T/C Anna Formanyuk | .25 | 100 |
| 1/18/12 | T/C Anna Formanyuk | .25 | 100 |
| 1/18/12 | T/C Alina | .25 | 100 |
| 1/18/12 | T/C Alina | .25 | 100 |
| 1/19/12 | T/C Alina | .25 | 100 |
| 1/19/12 | T/C Wolin | .25 | 100 |
| 1/19/12 | T/C Andrei Formanyuk | .25 | 100 |
| 1/20/12 | T/C Andrei Formanyuk | .25 | 100 |
| 1/24/12 | T/C Alina | .25 | 100 |
| 1/24/12 | T/C Alina | .25 | 100 |
| 1/24/12 | T/C Andrei Formanyuk | .25 | 100 |
| 1/25/12 | T/C Alina | .25 | 100 |
| 1/26/12 | T/C Andrei Formanyuk | .25 | 100 |
| 1/26/12 | T/C Wolin | .25 | 100 |
| 1/27/12 | T/C Wolin | .25 | 100 |
| 1/28/12 | T/C Alina | .25 | 100 |
| 1/28/12 | Conference with Boris Formanyuk and Alina | 2.0 | 800 |
| 1/30/12 | T/C Wolin | .25 | 100 |
| 1/30/12 | Review letter to court | .25 | 100 |
| 2/1/12 | T/C Marcus | .25 | 100 |
| 2/2/12 | T/C Jerzy Warias | .5 | 200 |
| 2/2/12 | T/C Juan Munoz | .5 | 200 |
| 2/2/12 | Review and revise settlement agreement | .5 | 200 |
| 2/3/12 | T/C Marcus | .25 | 100 |

| | | | |
|---|---|---|---|
| 2/6/12 | T/C Marcus | .25 | 100 |
| 2/12/12 | Review materials for Court conference | .5 | 200 |
| 2/14/12 | Court conference | 3.00 | 1,200 |
| | **Total for services:** | **75.25** | **30,100** |

# Exhibit 4

# ABBEY SPANIER RODD & ABRAMS, LLP

Abbey Spanier Rodd & Abrams, LLP ("Abbey Spanier") specializes in large, complex litigation in the fields of unfair employment practices, securities, mergers and acquisitions, corporate governance, consumer protection and antitrust.  The Firm has litigated thousands of cases in both state and federal courts throughout the United States.  Since the early 1960s, Abbey Spanier has been committed to litigating with the highest level of excellence and integrity.  We are committed to protecting shareholders and victims of corporate wrongdoing.

The Firm prides itself on the aggressive pursuit of our clients' goals and on the excellence of our work.  Abbey Spanier fights to achieve the very best possible result for our clients no matter how difficult the obstacles or well financed the opposition.

Over the last four decades, this Firm has been lead or co-lead counsel in cases resulting in billions of dollars in recoveries on behalf of investors and aggrieved parties.  Abbey Spanier has served as a lead counsel in some of the largest securities fraud class action settlements.  Among the more prominent of these cases are:  In re BankAmerica Corp. Sec. Litig. ($490 million recovery);  In re Adelphia Communications Corp. Sec. and Derivative Litig. ($455 million recovery) and In re Waste Management Inc., Sec. Litig. ($220 million recovery).

## THE FIRM'S RECENT ACHIEVEMENTS

Braun and Hummel v. Wal-Mart Stores, Inc., Case Nos. 3127 and 3757 (Court of Common Pleas, Philadelphia County).  Plaintiffs in this class action on behalf of 186,000 current and former hourly employees obtained a $78 million jury verdict against Wal-Mart and an express finding that Wal-Mart acted in bad faith in failing to pay class members for missed rest breaks and off the clock work.   The verdict was hailed as the largest jury verdict in the Commonwealth of Pennsylvania in 2006.  On October 3, 2007, the Court of Common Pleas ordered Wal-Mart to pay an additional $62.3 million in statutory damages to class members.  The trial court stressed the importance of compensating workers for their time:  "The law in its majesty applies equally to highly paid executives and minimum-wage clerks," he wrote. "Just as highly paid executives' promised equity interests . . . are protected fringe benefits and wage supplements . . ., so too [are] the monetary equivalents of 'paid break' time cashiers and other employees were prohibited from taking."  On November 14, 2007, a judgment for in excess of $187 million was entered by the trial judge in Braun/Hummel against Wal-Mart.  On June 1, 2011, the Superior Court of Pennsylvania affirmed all substantive aspects of the judgment on behalf of the class against Wal-Mart.  The three judge panel held that there was sufficient evidence in the record to conclude that Wal-Mart breached its contract with its hourly employees and violated the state's labor laws.  Wal-Mart is seeking leave to appeal to the Pennsylvania Supreme Court.

Iliadis, et al. v. Wal-Mart Stores, Inc., Case No. A-69-06 (Supreme Court New Jersey, Middlesex County).  Abbey Spanier prevailed in its quest to overturn the trial court's refusal to certify a class of 72,000 current and former Wal-Mart employees who were forced to work off the clock and miss meal breaks. The New Jersey Supreme Court reversed the trial court and the Appellate Division and remanded the case for entry of an order certifying the class, stating:

ABBEY SPANIER

'When the organization of a modern society, such as ours affords the possibility of illegal behavior accompanied by widespread, diffuse consequences, some procedural means must exist to remedy – or at least to deter – that conduct.' Here, the class action is just such a procedural device. By equalizing adversaries, we provide access to the courts for small claimants. By denying shelter to an alleged wrongdoing defendant, we deter similar transgressions against an otherwise vulnerable class – 72,000 hourly paid retail workers purportedly harmed by their corporate employer's uniform misconduct. Individually, the aggrieved Wal-Mart employees lack the strength in terms of resources and motivation to assert their grievances in court. Collectively, as a class, they are able to pursue their claims. (Citation omitted).

Following class certification, a settlement was reached providing for injunctive relief and the payment by Wal-Mart of up to $28 million. On November 17, 2009, the trial court approved the settlement.

In re Vivendi Universal, S.A., Securities Litigation, Civil Action No. 02-cv-5571 (RJH/HBP) (S.D.N.Y.).  Abbey Spanier serves as Lead Plaintiffs' Counsel in this long pending securities fraud class action against defendants Vivendi Universal, S.A., and its two most senior officers, Jean Marie Messier and Guillaume Hannezo.  On January 29, 2010, a three month long securities fraud trial against Vivendi culminated with a jury verdict finding Vivendi liable for securities fraud.  After discharging the jury, in describing the work of the attorneys trying the Vivendi case, Judge Richard J. Holwell stated, "I can only say that this is by far the best tried case that I have had in my time on the bench. I don't think either side could have tried the case better than these counsel have."  The Vivendi case is just one of nine securities class actions tried to verdict based on wrongs committed following the passage of the Private Securities Litigation Reform Act in 1995.  At the time of the verdict, Abbey Spanier estimated that investors from France, England, and the Netherlands, as well as the United States could recover as much as $9.3 billion, or €6.6 billion.  Abbey Spanier is currently handling various post-trial motions in this case and Vivendi's anticipated appeal of the verdict.

In re Adelphia Communications Corp. Securities and Derivative Litigation, 03 MD 1529 (LMM) (S.D.N.Y.).  This ongoing action arises out of one of the most egregious financial frauds ever uncovered at a public company.  From 1998 through 2002, Adelphia Communications Corporation – the nation's sixth largest cable company – systematically and fraudulently failed to report billions in loans.  Plaintiffs entered into partial settlements in the aggregate amount of $460 million with the Company's independent auditors, Deloitte & Touche, LLP, investment banking firms which underwrote offerings of Adelphia securities, lending banks, and Adelphia's officers and directors.  Judge Lawrence M. McKenna observed:  "If the Lead Plaintiff(s) had been represented by less tenacious and competent counsel, it is by no means clear that [they] would have achieved the success [they] did here on behalf of the Class."

In re Marsh & McLennan Companies, Inc. Derivative Litigation, C.A. No.753-VCS (Delaware Court of Chancery, New Castle County).  This case was brought on behalf of nominal defendant Marsh & McLennan Companies, Inc. and its wholly-owned subsidiary, Marsh, Inc. Plaintiffs alleged the failure of oversight and breach of the duty of loyalty by 22 Marsh officers and directors who permitted Marsh to receive kickbacks and steer clients' businesses to insurers

that paid Marsh contingent commissions under "market service agreements." Having survived the defendants' motions to dismiss after the Delaware Supreme Court decision in Stone v. Ritter made plain the perils of pleading a failure of oversight claim, the case settled following significant discovery. The settlement provided several benefits to the nominal defendants including substantial insurance proceeds and imposed important corporate governance provisions intended to prevent the recurrence of the wrongs alleged.

In re Medco Health Solutions Pharmacy Benefits Management Litig., Case No. 03-MD-1508 (CS) (S.D.N.Y). Abbey Spanier was one of two lead counsel in this case where plaintiffs were the trustees and beneficiaries of employee welfare benefit plans that directly or indirectly contracted with Medco Health Solutions which, at the time the case was commenced, was owned by drug manufacturer Merck & Co, Inc. Plaintiffs brought the action alleging that Medco had breached its fiduciary duty under the Employee Retirement Income Security Act of 1974 by failing to act in their best interest in its capacity as a pharmaceutical benefits manager for the plans. Specifically, plaintiffs alleged that Medco managed its formularies and implemented programs in ways that tended to favor Merck products. The case was litigated through summary judgment motions and a settlement that provides for a cash settlement fund in the amount of $42.5 million and significant changes in practice at Medco. The settlement was approved by the Court and the settlement fund was distributed to those class members that submitted identification forms in early 2010.

In re Tele-Communications, Inc. Shareholders Litigation, C.A. No. 16370 (Del. Ch.). This litigation arose out of the 1998 merger of Tele-Communications, Inc. ("TCI") and AT&T Corp. Plaintiffs alleged that defendants breached their fiduciary duty to the holders of TCI shares by insisting that a 10% premium be paid to the holders of super-voting TCI shares, held primarily by TCI insiders. The premium was alleged to be the product of unfair dealings and agreed to without any meaningful protections for class members. After overcoming defendants' motion for summary judgment, the case was settled days before trial was to begin in the Chancery Court. Chancellor Chandler, commenting on the $52 million settlement in February 2007, stated: "Attorneys on both sides were excellent and performed at the highest levels of professionalism, representing their clients in this matter, and I compliment you all for that."

In re Merrill Lynch & Co., Inc Research Reports Securities Litigation, 2 MDL 1484 (JFK) (S.D.N.Y.). This case, brought on behalf of Merrill Lynch mutual fund investors, was resolved while on appeal from its dismissal by the district court, and following the Second Circuit's dismissal of a related case. Judge John Keenan, commenting on the $39 million settlement in January 2007, stated: "[I]t is beyond dispute that plaintiffs' counsel conducted this litigation with great skill and tenacity. The high quality of representation provided by lead counsel is evident from both the record of this case and the resumes that the lead counsel have submitted to the Court…Abbey Spanier [has] tremendous experience in the field of complex securities class litigation."

In re Asia Pulp & Paper Securities Litigation, 01-CV-7351 (JES) (S.D.N.Y.). This securities class action raised several complex issues with respect to the efficiency of the market for foreign securities and the enforceability of a judgment against a foreign entity. Observing that lead counsel litigated the case "efficiently", the District Court approved the $46 million settlement of this action in July 2006.

Semerenko v. Cendant Corp., 98-4734 (WHW) (D.N.J.).  Just prior to the announcement that it was restating its financial statements, Cendant was the victor in a 1998 takeover battle for American Bankers Insurance Co. ("ABI").  Abbey Spanier represented ABI shareholders in this securities class action who alleged that ABI's stock price was artificially inflated by Cendent's false financial statements.  In a precedent setting decision, the Third Circuit Court of Appeals reversed the dismissal of the action and expanded the right to sue beyond direct purchasers from the issuer.  The $26 million settlement of this action was approved by the District Court in July 2006.

Tooley v. Donaldson, Lufkin & Jenrette, Inc., et al., C.A. No. 18414-NC (Del. Ch.).  This class action, brought on behalf of DLJ shareholders alleging the board's breach of fiduciary duty, was initially dismissed on standing grounds without any resolution as to the sufficiency of plaintiffs' pleaded claims.  On their second appeal to the Delaware Supreme Court, plaintiffs obtained a reversal of the dismissal of their pleading.  The landmark decision by the Supreme Court represented a departure from earlier Delaware authority on the distinction between direct and derivative actions.  The Tooley Court expressly disapproved both the concept of special injury and the concept that a claim is necessarily derivative if it affects all stockholders equally.  As a result of Tooley, the analysis now turns solely on who suffered the alleged harm and who would benefit from any recovery or other remedy (the corporation or the suing stockholders).

## THE FIRM'S LAWYERS

The Firm's attorneys represent one of the most experienced and skilled legal teams concentrating in class action litigation.  Each member of the Firm has successfully prosecuted complex class and derivative actions and individual actions involving some of the largest corporations in the United States.

### Partners

**ARTHUR N. ABBEY** – Mr. Abbey received his B.A. from Hofstra University in 1957, his L.L.B. from New York Law School in 1959, and his M.B.A. from New York University Graduate School of Business Administration in 1961.  He is admitted to the Bar of the State of New York, United States District Courts for the Southern and Eastern Districts of New York, most of the Circuit Courts of Appeals and the United States Supreme Court.

Mr. Abbey is the Firm's chief trial attorney, and has been lead counsel for many major class action securities matters, including one of the largest class action securities cases to go to trial, In re Vivendi Universal, S.A. Securities Litig., 02 Civ. 5571 (RJH/HBP) (S.D.N.Y.) which culminated with a jury verdict finding Vivendi Universal, S.A. liable for securities fraud on all 57 material misstatements.  The Vivendi case is just one of nine securities class actions tried to verdict based on wrongs committed following the passage of the PSLRA.

Mr. Abbey, the Senior and Founding Partner of Abbey Spanier, is a leading practitioner in the field of securities, antitrust and consumer litigation.  As a result of his expertise in class and complex litigation, Mr. Abbey has negotiated hundreds of class action settlements achieving extraordinary results for class members.

Mr. Abbey is recognized as an authority on class and complex litigation, securities fraud and corporate governance, contests for corporate control and directors' and officers' insurer's liability. He is frequently asked to lecture and serve on panels before the plaintiffs' and defendants' bar and Corporate America alike on these issues as well as other complex litigation issues.

The following are some of the seminars in which has participated: January 20, 2011, a lead presenter at the SEC Hot Topics 2011 luncheon on class actions and derivative actions; March 4, 2010, a guest lecturer at Harvard Law School on the Vivendi trial; February 17, 2010, a guest lecturer at New York Law School on the Vivendi trial; February 4, 2010, P.L.I Seminar on Mergers and Acquisitions; February 5, 2009, P.L.I. seminar "Contests for Corporate Control 2009"; April 24, 2008, a guest lecturer at Harvard Law School on securities litigation pursuant to the Securities Act of 1933 and Securities Exchange Act of 1934; April 9, 2008, Willis Executive Risks Practice Meeting: Securities Panel; January 2008 P.L.I. seminar "Contests for Corporate Control"; June 21, 2007, a guest commentator on CNBC speaking on shareholder litigation involving leveraged buy-outs; March 2007 "Spotlight on Litigation"; 2007 Federal Bar Counsel's Winter Meeting, Panelist – "The Lawyer's Role in Corporate Governance"; January 2007 P.L.I. seminar "Contests for Corporate Control"; 2007, a guest lecturer at Columbia Law School on securities litigation; 2006 PLUS Seminar on D&O Liability & Insurance Issues; June 2006 Anderson Kill & Olick, P.C. Fourth Annual D&O Conference on "The Forgotten Promise – Strategies and Tactics to Maximize the Value of D&O Insurance"; and January 2006 P.L.I. seminar "Contests for Corporate Control."

Mr. Abbey currently serves as Chairman of the Board of Trustees of New York Law School and is Chairman of the Audit Committee of the Federal Bar Council.

**KARIN E. FISCH** – Ms. Fisch received her A.B. from Cornell University, College of Arts and Sciences in 1988, and her J.D. from Fordham University School of Law in 1992, where she was Managing Editor of the Fordham Urban Law Journal.  She is admitted to the Bar of the State of New York, the United States District Court for the Southern District of New York and the Courts of Appeals for the Second, Third and Fifth Circuit.

Ms. Fisch specializes in shareholder class action and derivative litigation.  In 2008, Ms. Fisch successfully briefed and argued a motion for a preliminary injunction after full expedited discovery in In re The TriZetto Group, Inc. Shareholders Litig., C.A. No. 3694-VCN (Del. Ch.). Ms. Fisch was also part of the team that litigated In re Sovereign Bancorp Inc., Shareholder Litig., Case No. 2587 (Court of Common Pleas, Philadelphia County), to its successful conclusion after full expedited discovery and an evidentiary hearing on plaintiffs' motion for a preliminary injunction.   Other notable cases in which Ms. Fisch was an active participant are:   In re Telecommunications, Inc. Shareholders Litig., C.A. No. 16370 (Del. Ch.); In re Seagate Technology, Inc. Sec. Litig., C.A. No. 17932-NC (Del. Ch.); In re Liberty Media Corp. Sec. Litig., C.A. No. 13168 (Del. Ch.); and Schoenfeld v. XO Comm., Index No. 01-018358 (N.Y. Sup.).

Ms. Fisch also leads the Abbey Spanier team litigating cases within several of Abbey Spanier's other practice areas including: Antitrust (In re Hypodermic Product Antitrust Litig., MDL No. 1730 (D.N.J.)); Consumer Protection (Marcus v. BMW of North America, LLC and Bridgestone

Firestone North American Tire, C.A. No. 08-5859 (D.N.J)); and ERISA litigation (In re Medco Health Solutions, Inc. Pharmacy Benefits Management Litig., 03 MDL 1508 (S.D.N.Y)).

**NANCY KABOOLIAN** – Ms. Kaboolian received her B.A. from the State University College of New York at Fredonia in 1979 and her J.D. from New York Law School in 1989.  She is admitted to the Bar of the State of New York and the United States District Courts for the Southern and Eastern Districts of New York.

Ms. Kaboolian has litigated complex class actions in state and federal courts across the country for her entire career. Ms. Kaboolian manages the Firm's case development team responsible for highlighting and analyzing potential new cases. Her responsibilities include overseeing the Firm's institutional investor monitoring program. In addition, Ms. Kaboolian performs a variety of research projects for the Firm's institutional clients to evaluate current trends in class action litigation and class action settlements. She is the liaison with the Firm's institutional clients and prepares all presentations and reports for those clients.  Ms. Kaboolian is responsible for spearheading the Firm's business and development initiatives as well as managing its marketing and social network efforts.

Ms. Kaboolian is an affiliate member of the National Association of State Treasurers and the Council of Institutional Investors. She is also a member of the New York Bar Association, the American Bar Association, The Association of the Bar of the City of New York, the National Employment Lawyers Association and the National Employment Lawyers Association/New York.

**STEPHEN T. RODD** – Mr. Rodd received his J.D. degree in 1974 from New York University Law School, where he was a Root-Tilden Scholar and an Editor of the Journal of International Law and Politics.  The University of Kansas is his undergraduate alma mater, where he received his B.A. degree in 1969.  He is a member of the Bar of the State of New York, the United States District Courts for the Southern and Eastern Districts of New York, the Second, Fifth and Sixth Circuit Courts of Appeals, and the United States Supreme Court.

Mr. Rodd was lead attorney for the litigation team in In re Vivendi Universal, S.A. Sec. Litig. class action, culminating in a three month trial and jury verdict finding defendant Vivendi Universal, S.A. liable for securities fraud on each of the 57 material misstatements alleged by plaintiffs.  Vivendi is just one of nine securities class actions tried to verdict based on wrongs committed following the passage of the PSLRA.  In addition, Mr. Rodd serves as lead counsel for plaintiffs in an action seeking restitution from the French railway, Société Nationale des Chemins de Fer Français (SNCF) in connection with the conduct of deportation trains in France during World War II.

Mr. Rodd has served as lead counsel or co-lead counsel in many other cases that have achieved significant benefits for shareholders including: In re Crazy Eddie Sec. Litig., No. 87 Civ. 0033 (E.D.N.Y.), In re Wedtech Corp. Sec. Litig., No. 86 Civ. 8628 (S.D.N.Y.) and In re BankAmerica Corp. Sec. Litig., MDL No. 1264 (E.D. Mo.).

Mr. Rodd is currently serving on the Board of Directors of MFY Legal Services, Inc. and a member of the Securities Litigation Committee of the Bar Association of the City of New York.  He has participated in numerous conference panels on class action law and procedures, including an

event sponsored by the Young Lawyers Section of the Paris Bar Association, at the invitation of the French consumer organization, Que Choisir.  Other notable panels include the PLI Consumer Financial Services Litigation seminar, the ACI D&O Liability Conference, the NIRI Southwest Regional Conference panel on SEC Regulation and the PLI conference on Hot Securities Issues in a Down Economy.

**JUDITH L. SPANIER** – Ms. Spanier received her B.A. from Cornell University, College of Arts and Sciences in 1975, and her J.D. from New York University School of Law in 1978.  She is admitted to the Bar of the State of New York, the United States District Courts for the Southern and Eastern Districts of New York and the Second, Ninth and Tenth Circuit Courts of Appeals.

Ms. Spanier has served as lead counsel or co-lead counsel in numerous cases that have achieved significant benefits on behalf of shareholders including In re Adelphia Comm. Corp. Sec. & Deriv. Litig., 3 MDL 1859 (S.D.N.Y.); In re Tele-Communications, Inc. Shareholders Litig., C.A. No. 16370 (Del. Ch.); In re Waste Management, Inc. Shareholders Deriv. Litig., C.A. No. 17313, (Del. Ch. and Glancy v. Sternlicht, Civ. No 204982 (Md. Cir. Ct.).   Ms. Spanier has tried a securities fraud class action case through jury trial to verdict in In re Computer Assoc., Civ. No. 90-cv-2398 (JBW) (E.D.N.Y.).

Ms. Spanier was one of the lead trial attorneys in Braun and Hummel v. Wal-Mart Stores, Inc., Case Nos. 3127 and 3757 (Court of Common Pleas, Philadelphia County).  The lawyers on the Braun/Hummel trial team were named as finalists by Public Justice for the 2007 Trial Lawyer of the Year Award.  In addition, Ms. Spanier argued the successful appeal to the New Jersey Supreme Court from the denial of class certification in Iliadis v. Wal-Mart Stores, Inc., 191 N.J. 88 (2007).  Ms. Spanier was also on the plaintiff's lead counsel teams in several large consumer class actions including Henry v. Sears, Roebuck, No. 98 C 4110 (N.D.Ill.) (class action on behalf of an 11 million member class).

Ms. Spanier successfully argued the appeal before the Delaware Supreme Court in In re Primedia, Inc. Derivative Action; Kahn v. Kolberg Kravis Roberts & Co., et al., No. 436, 2010, 2011 Del. LEXIS 313 (Del. Sup. Ct. June 20, 2011). The Delaware Supreme Court reversed the dismissal of the shareholder derivative lawsuit on behalf of Primedia Inc. (PRM) seeking to recoup monies arising out of alleged insider trading in Primedia's securities by Kolberg Kravis Roberts & Co. ("KKR") the Company's controlling shareholder.

Ms. Spanier is a member of the Labor and Employment Committee of the New York City Bar Association.  She has lectured or served as a panelist at various Glasser Legal Works Panels on "Litigation and Resolution of Complex Class Actions" and most recently has been a panel member in a July 2008 PLI seminar, "Class Action Litigation 2008:  Prosecution and Defense Strategies" and a December 11, 2008 New York City Bar Association seminar, "Securities Litigation During the Credit Crisis:  Current Developments and Strategies."

### Associates

**STEPHANIE AMIN-GIWNER** – Ms. Amin-Giwner received her B.A., cum laude with honors, from Brandeis University in 1995 and her J.D., magna cum laude, from American University,

Washington College of Law in 1998.  She is admitted to the Bar of the State of Maryland and the State of New York, the United States District Courts for the Southern and Eastern Districts of New York, the Second Circuit Court of Appeals and the United States Supreme Court.

**ORIN KURTZ** – Mr. Kurtz received his B.S. in Jazz Studies from the State University of New York at New Paltz in 1998 and received his J.D., magna cum laude, from New York Law School in 2004. He was the student commencement speaker at graduation and during law school he served as an Executive Articles Editor on the New York Law School Law Review.  Mr. Kurtz is admitted to the Bar of the State of New York, the United States District Courts for the Southern and Eastern Districts of New York and the Second Circuit Court of Appeals.

**NATALIE S. MARCUS** – Ms. Marcus received her B.A, cum laude, from Barnard College, Columbia University in 2001.  She received her J.D. from the Benjamin N. Cardozo School of Law in 2004 where she served as the Articles Editor of the Cardozo Journal of Law and Gender. Ms. Marcus is admitted to the Bar of the State of New York and the State of New Jersey and to the United States District Courts for the Southern and Eastern Districts of New York and the District of New Jersey.

**RICHARD B. MARGOLIES** – Mr. Margolies received his B.S. from Lehigh University, College of Business and Economics in 1996, his J.D. from New York Law School in 2001 and his M.B.A. from New York University, Leonard N. Stern School of Business in May 2010.  Mr. Margolies is admitted to the Bar of the State of New York and the United States District Courts for the Southern and Eastern Districts of New York.

**JEREMY NASH** – Mr. Nash received his B.S. in Biology from the University of California, San Diego in 2003 and his J.D. from New York Law School in 2006.  Mr. Nash is admitted to the Bar of the State of New York and the United States District Courts for the Southern and Eastern Districts of New York.

**JULIE SALWEN -** Ms. Salwen received her J.D. from Fordham University School of Law in 2008 where she was a Stein Scholar for Public Interest Law and Ethics. She received her B.F.A. from New York University in 1977. She is admitted to the Bars of the State of New York and the State of New Jersey and the United States District Court for the District of New Jersey.

# Exhibit 5

<u>**MITCHELL SCHLEY, ESQ.**</u>

<u>**BIOGRAPHICAL SUMMARY**</u>

**With 25 years as a practicing attorney, Mitchell Schley formed the Law Offices of Mitchell Schley, LLC, a New York and New Jersey law firm specializing in the representation of employees and employers in all aspects of labor and employment law, including litigation in the federal and state courts and in arbitration.**

**Mr. Schley brings an extensive and multifaceted background to his practice which offers multiple advantages to clients who seek his representation and counsel.  Mr. Schley received his Bachelor's Degree from Cornell University, School of Industrial and Labor Relations, the preeminent labor relations program in the country.  He then obtained his law degree from Rutgers University, and became a member of the bars of New Jersey, New York and Pennsylvania.**

**Following law school, Mr. Schley joined the staff of the National Labor Relations Board, where he prosecuted cases on behalf of the federal government in federal and administrative court. During this 6 year period, Mr. Schley won nearly every trial he handled against corporations and unions for violations of workers' rights and federal labor law.  A particular noteworthy case Mr. Schley tried resulted in a judgment against an aerospace manufacturer for $10 million on behalf of 200 unlawfully fired workers, one of the largest recoveries in the history of the NLRB.  As a result of Mr. Schley's success as a trial lawyer, he was promoted to the position of Supervisory Attorney and supervised and led a team of agency trial lawyers and investigators.**

**After his government service, Mr. Schley became associated with Hannoch Weisman, one of the largest and most prominent corporate law firms in New Jersey where he advised and litigated on behalf of Fortune 500 and mid-sized corporations in commercial and employment law matters.**

Mitchell Schley, Esq.
Biographical Summary
Page 2

Most recently for 8 years, Mr. Schley held the position of Managing Director in the Legal Department of Bear Stearns & Co., Inc., a global investment bank and Wall Street brokerage firm. In this capacity, Mr. Schley was principally responsible for all of the employment and related regulatory litigation of the Firm, and for advising management on all employment and related business matters.

Business units he advised included Retail Brokerage, Wealth Management, Investment Banking and Corporate Finance, Equity Sales and Trading, Equity Research and Information Technology. Mr. Schley prepared employment contracts, executive compensation agreements, consulting agreements, severance agreements, non-competition and non-solicitation agreements, and merger and acquisition agreements. He developed human resources policies and advised management with regard to employment law issues and disputes, including hiring, layoffs, severance agreements, benefits, performance issues, independent contractor issues, wage and hour matters, and corporate acquisitions. Mr. Schley also led internal corporate investigations involving FINRA and SEC regulatory matters, theft of intellectual property, employee misconduct, and employment terminations.

Mr. Schley has litigated disputes involving wage and hour and overtime cases including class actions, whistleblower, sexual harassment, age discrimination, sex discrimination, sexual orientation, race and national origin discrimination, disability discrimination, severance claims, independent contractor issues, unemployment insurance claims, breach of contract and defamation cases, compensation and bonus disputes, and non-competition and non-solicitation cases.

In addition Mr. Schley has litigated disputes between brokerage firms involving departing retail brokers and departing teams,

Mitchell Schley, Esq.
Biographical Summary
Page 3

traders, bankers, research analysts, and injunction actions in
state and federal court  and before FINRA.

Mr. Schley also has extensive experience representing
companies and employees before federal and state law agencies
that enforce labor laws.  These agencies include the Equal
Employment Opportunity Commission (EEOC), the New York and
New Jersey Division for Human Rights, which handle employment
discrimination claims; the New York, New Jersey and Federal
Departments of Labor, which handle wage and overtime cases;
and the National Labor Relations Board (NLRB), which handles
union and labor-management disputes.

Mr. Schley negotiates employment contracts, severance and
separation agreements, non-compete and non-solicitation
agreements. He also advises and represents stockbrokers and
financial advisors who are moving between brokerage firms.

In addition to his experience in the financial services industry
and investment banking, Mr. Schley has also handled matters in
many other industries including pharmaceutical, chemical,
information technology and data processing, as well as in the
public sector.

You can contact the Law Offices of Mitchell Schley, LLC as
follows:

245 Park Avenue                          Merrill Lynch Building
24th Floor                               197 Route 18 South
New York, NY  10167                      South Tower, Suite 3000
Tel: (212) 672-1848                      East Brunswick, NJ 08816
Fax: (212) 372-8798                      Tel:  (732) 214-2612
                                         Fax:  (732) 514-6747

mschley@schleylaw.com